## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Disability Support Alliance,
o/b/o its members; and
Scott Smith,

Case No. 15-cv-2693 JNE/BRT

                         Plaintiffs,

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF
MOTION TO DISMISS**

v.

Western Mental Health Center, Inc.,

                         Defendant,

### INTRODUCTION

Plaintiffs sued Western Mental Health Center, Inc., the owner of a building in Marshall, Minnesota, alleging insufficient accessible parking under the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). Defendant moves the court for an order dismissing Plaintiffs' causes of action for lack of Article III standing and otherwise failing to state a claim upon which relief can be granted.

### FACTS

The facts, for the purposes of this motion, are those set forth in the Complaint, with such facts being taken in the light most favorable to the Plaintiffs as the non-moving party pursuant to the legal standards set forth below, and facts contained in affidavits submitted in support of Defendant's memorandum of law.[1]

---

[1]   In analyzing a motion to dismiss under Rule 12(b)(1), a court is permitted to consider information outside of the pleadings, typically on a factual challenge. Satz v. ITT Fin. Corp., 619 F.2d 738, 742 (8th Cir. 1980).

According to their Complaint, Plaintiffs are Scott Smith, a man with a physical disability necessitating use of a wheelchair, and Disability Support Alliance ("DSA") a non-profit corporation, which Plaintiff Smith is a member of, that has the mission of "eliminating discrimination on the basis of disability" and improving the lives of those with disabilities. *Complaint, ¶ 8.* Defendant Western Mental Health Center ("WMHC") operates a mental health clinic at 1212 East College Drive, Marshall, Minnesota. *Complaint, ¶ 11.*[2]

Plaintiffs allege "[t]hat the accessible parking spaces in the 'Western Mental Health Center' customer parking lot are located on a slope steeper than 1:48" in violation of the ADA and the ADA Accessibility Guidelines ("ADAAG").  Plaintiffs plead no plan or other fact which would show immediate injury.

WMHC has remedied any alleged deficiency involving its accessible parking spaces by locating the same in accordance with the ADA and ADAAG. *Declaration of Sara Ackerman ("Dec. of Ackerman"), ¶ 8 & 10.* The alleged barrier identified in the Complaint no longer exists and therefore Plaintiffs are unable to establish a case or controversy for Article III standing.  As a result, the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim.

---

[2]  Western Mental Health Center, Inc., does not own a building located at 1247 Range Street, Mankato, Minnesota, as alleged in ¶2 of the Complaint.

**ARGUMENT**

**I.  Plaintiffs Lack Article III Standing and Their Claims Must be Dismissed Under Fed.R.Civ.P. 12.**

In order to entertain a plaintiff's causes of action every Article III Court Federal Court must have subject matter jurisdiction, which is the ability to hear the case because a case or controversy exists upon which the court may offer relief.  U.S. Const. Art. III, Sec. 2; <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 559 (1992). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 671 (2009).

In the above-titled matter Plaintiffs lack subject matter jurisdiction over their causes of action because they lack standing before this court.  Standing requires plaintiffs to have a direct, personal stake in the outcome of the suit and is an "essential and unchanging part" of this case-or-controversy requirement. <u>Lujan</u>, 504 U.S. at 560 (1992). Standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." <u>Steger</u>, 228 F.3d at 892 (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975)).

Plaintiffs' burden relative to Article III standing requires proof: (1) they suffered an "injury-in-fact," (2) there is a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. <u>Steger</u>, 228 F.3d at 892 (citing <u>Lujan</u>, 504 U.S. at 560–61). *All three elements must exist* to establish Article III standing. <u>Vermont Agency of Natural Resources v. United States ex rel. Stevens</u>, 529 U.S. 765, 771, (2000). (*Emphasis added.*)

An injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id. (quoting Lujan, 504 U.S. at 560-61).  Further, Title III of ADA provides exclusively for injunctive relief and for a plaintiff to have standing to obtain an injunction he must "demonstrate the real and immediate threat of *future harm*." City of Los Angeles v. Lyons, 461 U.S. 95, 101–102 (1983) (Steger, 228 F.3d at 894 (partial concurrence)) (*Emphasis added.*)

Federal courts must be diligent in observing standing requirements, "particularly in view of a recognized trend of abusive ADA litigation, special diligence and vigilant examination of the standing requirement are necessary and appropriate to ensure the litigation serves the purposes for which the ADA was enacted." Harris v. Stonecrest Care Auto Ctr., LLC, 472 F. Supp. 2d 1208, 1215 (S.D. Cal. 2007). Here WMHC advances no argument as to whether Plaintiffs' lawsuit in the above-titled matter is abusive other than to assert that Plaintiffs appear to be serial ADA litigants as demonstrated by their ADA litigation history.[3]  Of course the serial nature of Plaintiff Smith's ADA litigation activities does not mean Smith lacks standing in every instance.  As discussed below, however, Plaintiffs' motivations to "eliminate discrimination on the basis of disability" appear secondary in nature to a financial motivation.

A.    **Standard of Review.**

Where a defendant makes a Rule 12(b)(1) facial challenge to subject matter jurisdiction the district court evaluates such jurisdictional allegations under the standard

---

[3]    Plaintiff Scott Smith is a named plaintiff in at least 29 ADA related cases in the District Court in the District of Minnesota and the Disability Support Alliance, of which Smith is a member, is a named plaintiff in at least 56 ADA related cases in the District Court in the District of Minnesota (and dozens more in Minnesota state courts).  *See Sioux Biochemical, Inc. v. Cargill, Inc.*, 410  F.Supp.2d 785, fn1 (N.D. Iowa April 11, 2005)(court may take judicial notice of public records, such as the docket and pleadings of pending judicial proceedings).

set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>Osborn v. United States</u>, 918 F.2d 724, n6 (8th Cir. 1990) (in a facial challenge to subject matter jurisdiction, "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)").

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). When reviewing a motion to dismiss, the Eighth Circuit has held that a court "must accept [the] plaintiff[s]' specific factual allegations as true but [need] not ... accept a plaintiff's legal conclusions." <u>Brown v. Medtronic, Inc.</u>, 628 F.3d 451, 459 (8th Cir. 2010) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under <u>Twombly</u>. <u>Iqbal</u>, 556 U.S. 662, 678 (citing <u>Twombly</u>, 550 U.S. at 555) (neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice).

**B.     Plaintiffs Have Not Met the Requirement to Initiate a Private Cause of Action.**

Plaintiffs' claims should be dismissed because Plaintiffs facially lack standing. A Plaintiff facially lacks standing when they fail to allege a necessary standing element in their complaint. *See* <u>Salley v. Catholic Health Initiatives</u>, 509 F.3d 517, 521 (8th Cir.2007).

The ADA provides a private cause of action to a person subjected to discrimination on the basis of disability. 42 U.S.C.A. §12188(a)(1). As a threshold issue, a plaintiff must show that he or she has "actual notice that a person or organization

covered by this subchapter *does not intend to comply* with its provisions." Id. (*Emphasis added.*). The majority rule with respect to the §12188(a)(1) notice requirement is that a plaintiff satisfies this requirement when the plaintiff becomes aware of discriminatory conditions existing at a public accommodation and is thereby deterred from visiting or patronizing that accommodation. Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1041 (9th Cir.2008); *see also* Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1136-37 (9th Cir.2002); *see also* Disabled Ams. for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64 (1st Cir.2005).

### 1. Plaintiff Not Deterred from Visiting or Patronizing Western Mental Health Services.

Plaintiffs fail to meet this standard. Plaintiff Smith states that prior to his April 17, 2015 visit which is the basis for his claims in the above-title matter, he "has visited 'Western Mental Health Center' on prior occasions." *Complaint, ¶12.* "Prior occasions" is plural indicating multiple prior visits to WMHC by Smith. By admitting multiple visits prior to his April 17, 2015, visit, Smith is admitting that the alleged barrier did not deter him from visiting or patronizing WMHC. It appears that he only became "deterred" at such time as he became aware he could file a lawsuit against WMHC which would likely result in a financial settlement benefiting DSA.

### 2. Failure to Determine Western Mental Health Services Did Not Intend to Comply with the ADA.

Alternately, Plaintiffs' did not obtain the required actual notice that WMHC did not intend to comply with the ADA to allow Plaintiffs a private right of action.

The standard articulated in Doran fails to take into consideration the "does not intend to comply" language contained in §12188(a)(1). This language is not superfluous.

"[D]oes not intend to comply" informs as to the type of information a plaintiff must demonstrate to satisfy the requirements of §12188(a)(1). Something more than just encountering a barrier must occur. A public accommodation's intent with respect to ADA compliance cannot be discerned without some type of pre-litigation communication. Plaintiffs are anticipated to argue that the ADA has been in effect for two and one-half (2 ½) decades, that the WMHC has had plenty of time to bring its facility into compliance, and therefore merely encountering an alleged barrier is sufficient notice of intent. Such argument neglects a myriad of scenarios where a business owner has identified access deficiencies and is in the process of taking corrective action. For example, a long-term owner of a business may be in the process of a capital improvement project to implement an ADA compliant plan to remodel their facilities. Alternately, the business may have been recently purchased by the current owner (therefore the current owner has not ignored the ADA requirements for two and one-half (2 ½) decades) and is in the process of updating the business to bring it into ADA compliance. It cannot be said that such business owners are not intending to comply with the ADA in those scenarios. The current awareness/deterrence standard fails businesses owners in such circumstances. Clearly some sort of verbal or written notice to the business owner is necessary to discern the owner's intent in this regard.

Here, WMHC did not receive any notice, either written or verbal, from either Plaintiff prior to being served with the Complaint. *Dec. of Ackerman, ¶ 7.* And Plaintiffs' Complaint does not allege that they provided WMHC any notice whatsoever. Had it received such notice WMHC could have communicated to Plaintiffs that not only did it have a capital improvement project planned to address the parking issues at its East

College Drive location, but also that it had contacted the Marshall Chamber of Commerce to obtain an ADA Readily Achievable Barrier Removal Audit sponsored by the Marshall Chamber of Commerce. *Dec. of Ackerman ¶ 5 & 6.*[4]  Such actions substantiate that WMHC was not refusing to comply with the requirements of the ADA.

Interestingly, in a May 25, 2015, interview with the *Marshall Independent* Disability Support Alliance member Zach Hillesheim[5] stated "DSA gives businesses a chance to comply with the ADA before notifying them of potential legal action. Only after that point is a lawsuit filed." *Declaration of Kevin K. Stroup ("Dec. of Stroup") ¶ 1, Ex. 1, pg. 2.*  This is patently false in the above-entitled matter.  WMHC received no notification from Plaintiffs of potential legal action.  *Dec. of Ackerman, ¶ 7.*

Plaintiff Scott Smith contradicted Zach Hillesheim's assertion and confirms that no notice is provided to a targeted business when he stated in the same interview that "[w]hen all you do is sit down and talk with people, they don't feel like they really have to change.  The discussion stalls out, and you don't really make any progress." *Dec. of Stroup, ¶1, Ex. 1, pg. 1.*  Of course WMHC was not provided any notice whatsoever prior to being served with the Summons and Complaint in the above-titled matter.  Therefore WMHC had no opportunity to demonstrate its intent as there was no: i) discussion of alleged violations; ii) notice of potential legal action; iii) discussion of WMHC's capital improvement plan involving its parking lot; iv) of WMHC's request for an ADA audit by the Marshall Chamber of Commerce. *Dec. of Ackerman ¶ 7.*  Smith states that he had

---

[4]   In a July 6, 2015, interview with WCCO 4 News out of Minneapolis, Minnesota, Zach Hillesheim, a member of DSA stated that "If businesses don't want to get sued they should just seek out people who know what they are doing." *Dec. of Stroup, ¶2, Ex. 2.*

[5]   Zach Hilleshiem is a named plaintiff in at least 14 ADA related cases in the District Court in the District of Minnesota.

visited WMHC on prior occasion. *Complaint, ¶12.* How difficult would it have been to notify WMHC staff of his concerns regarding its accessible parking spaces?

Perhaps the motivation of DSA is best reflected in its refusal to work with the Marshall Chamber of Commerce on accessibility barrier issues involving Marshall area businesses with access barriers. *Affidavit of Cal Brink ("Aff. of Brink") ¶ 5*; *Dec. of Stroup, ¶1, Ex. 1, pg. 3.* The Chamber of Commerce offered to work with DSA involving businesses identified by DSA having access barrier issues. Id. Upon identification by DSA the Marshall Chamber intended to work with such business to correct identified barriers before a lawsuit would be filed. Id. DSA refused the Chamber's offer. Id. As discussed above, it gives the impression that Plaintiffs' primary motivation is other than "elimination of discrimination on the basis of disability." *Complaint, ¶8.*

Plaintiffs' compliance with the §12188(a)(1) "actual notice" requirement must include more than simply encountering a barrier and a rote bare bones recitation that such deters Plaintiff Smith from future visits and patronization of WMHC; particularly since Smith had visited the facility on prior occasions without being deterred, and since WMHC was in the process of ensuring compliance with the ADA and ADAAG.

**C.   Plaintiffs Can Not Show Any Injury Likely to be Redressed by a Favorable Decision.**

As discussed above Article III standing requires that any alleged injury will be redressed by a favorable decision, which is likely to remedy the harm. Steger, 228 F.3d at 893 (Citing Lujan, 504 U.S. at 560). It cannot be merely speculative that the harm or injury alleged will be redressed. Id. The burden to prove standing, including the

existence of a redressable injury, continues throughout the litigation. "A plaintiff must have standing throughout the life of a case, not just at the beginning, in order for it to constitute a justiciable 'case or controversy' under Article III." Sawczyn v. BMO Harris Bank N.A., 8 F.Supp.3d 1108, 1113 (D. Minn. 2014) (citation omitted).

Here there is no harm or injury to be redressed by the Court. This case involves a *single* alleged violation concerning WMHC's accessible parking spaces being located on a slope steeper than 1:48. Subsequent to the filing of the Complaint in this matter WMHC has taken steps to locate the accessible parking space to level ground. *Dec. of Ackerman, ¶ 8, 11 & Ex. 1*. To ensure compliance with the ADA and ADAAG, WMHC contracted with Buck's Parking Lines & Signs, a vendor familiar with accessible parking space requirements under the ADA, to install permanent markings relating to the accessible parking space and a marked crossing leading to WMHC's building entrance Id. *¶ 9*. The striping work has been completed. Id. *¶ 10, 11, 12, 13, Ex. 1, Ex. 2, & Ex. 3*. The court is without the power to order any further change as the current condition is now fully compliant with the accessibility requirements under applicable state and federal laws. WMHC is making both a facial and factual challenge to Plaintiffs' standing with respect to the redressability element, because the claims for injunctive relief under the ADA and MHRA are now moot and Plaintiffs therefore lack standing on their claims generally and the case should be dismissed.

### 1.    Plaintiffs' Claims are Moot.

WMHC's remediation of the alleged ADA violation have mooted Plaintiffs' claims. In Rogers Group, Inc. v. City of Fayetteville, the U.S. 8th Circuit Court of

Appeals noted that where defendant(s) have voluntarily made changes before judicial action was taken the case would have been moot. 683 F.3d 903, 911 (8th Cir. 2012); *see also,* Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res., 532 U.S. 598 (2001).   The U.S. Supreme Court has held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy … if unaccompanied by any continuing, present adverse effects." Renne v. Geary, 501 U.S. 312, 320-321 (1991).   The same Court also held that a case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968); Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc., 528 U.S. 167, 189 (2000).  The Supreme Court characterized such activity as "voluntary cessation".

In reviewing whether voluntary cessation has occurred other circuits have established the following standards: (1) whether the challenged conduct was isolated or unintentional or continuing and deliberate; (2) whether defendant's voluntary cessation was timed to anticipate litigation; and (3) whether the defendant has admitted liability. Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1184 (11th Cir. 2007).

ADA architectural barrier cases are, however, a "unique subset of voluntary cessation cases" due to the "nature of structural modifications (as opposed to simply a change in a discriminatory policy)[.]" Houston v. 7-Eleven, Inc., 2014 WL 351970, at *2 (S.D. Fla. Jan. 31, 2014). "Several courts have found that where structural modifications have been undertaken to make the facility ADA compliant, the case is moot." Id. According to the Houston court "[t]he fundamental rationale supporting these cases is

that the alleged discrimination cannot reasonably be expected to recur since structural modifications permanently undo the offending conduct." Id. (citing <u>Kallen v. J.R. Eight, Inc.</u>, 775 F.Supp.2d 1374, 1379 (S.D. Fla. 2011) ("It is untenable for Plaintiff to suggest that once the renovations are completed they could be undone."); *see also*, <u>Wilson v. Pier 1 Imports (US), Inc.</u>, 439 F. Supp. 2d 1054 (E.D. Cal. 2006) (dismissing claim as moot after retail establishment replaced undersized parking stalls because it was not reasonable to expect that the owner would change the parking spaces back)).

As previously discussed, remediation of the alleged deficient accessible parking space has been completed. *Dec. of Ackerman* ¶ 10.  The accessible parking space at WMHC is compliant with the ADA and ADAAG. Id.   Further, Ms. Ackerman affirmatively states that Western Mental Health Services has no intention to remove or otherwise modify these changes. Id. ¶ *14*.  It is "absolutely clear" the allegedly wrongful condition of the parking lot could not reasonably be expected to recur as the stripping painted on the parking lot is permanent in nature.  Because WMHC has remediated the alleged deficiencies in their parking lot Plaintiffs cannot hope for any order which might grant them redress and their case is moot.

### 2.    Plaintiffs' Lack Standing Relative to Unidentified Violations.

Plaintiffs allege that other violations of the ADA and ADAAG were encountered by the Plaintiffs and exist at WMHC. *Complaint, ¶29.*  It is anticipated that Plaintiffs intend such allegations as an additional basis for injunctive relief under the ADA.  Yet Plaintiffs cannot meet their burden concerning redressability on such unidentified violations. As discussed in <u>Steger</u>, a Plaintiff "must at least prove knowledge of the

barriers and that they would visit the building in the *imminent future* but for those barriers." <u>Steger</u>, 228 F.3d at 892. (*Emphasis added.*)  Plaintiffs here cannot show that any real barrier exists, or that any such barrier would cause Plaintiffs harm in the imminent future.  Had Plaintiffs truly "encountered" other barriers, such barriers are known and they would have surely been identified in Plaintiffs' Compliant.  In a case involving similar conduct by a plaintiff, the U.S. 9th Circuit Court of Appeals rejected such tactics and held that "all alleged access barriers must be identified in Plaintiff's complaint in order to give the defendant fair notice under Rule 8." <u>Oliver v. Ralphs</u> <u>Grocery Co.</u>, 654 F.3d 903, 909 (9th Cir. 2011).  <u>Oliver</u> prohibits a Plaintiff from making a bare assertion that other violations may exist without identifying such.

As stated in <u>Sawczyn</u>, "[a] plaintiff must have standing throughout the life of a case, not just at the beginning, in order for it to constitute a justiciable 'case or controversy' under Article III." 8 F.Supp.3d at 1113.  Here Plaintiffs now lack standing as the alleged violations have been remedied by WMHC.

## II.     Plaintiffs' MHRA Claims Must Also Be Dismissed.

Courts generally analyze the public accommodations requirements of the MHRA in the same manner as the ADA. *See, e.g.*, <u>Krueger v. Zeman Const. Co.</u>, 758 N.W.2d 881, 887 (Minn. Ct. App. 2008) aff'd, 781 N.W.2d 858 (Minn. 2010) (interpretation of MHRA guided by interpretation of federal law). See also <u>Fenny v. Dakota, Minn. &</u> <u>Eastern R.R. Co.</u>, 327 F.3d 707, 711 n.5 (8th Cir. 2003); and <u>Roberts v. KinderCare</u> <u>Learning Ctrs., Inc.</u>, 86 F.3d 844, 846 n.2 (8th Cir. 1996))  Therefore, Plaintiffs' lack of standing which result in the failure of Plaintiffs' ADA claims also result in the failure of

Plaintiffs MHRA claims.

Alternately, should the Court find differences between the ADA and the MHRA preventing dismissal of the MHRA claims, WMHC requests that this court dismiss the state law claims over which this court has supplemental jurisdiction. *See* 28 U.S.C. 1367(c). A court should only retain jurisdiction over supplemental state law claims in unusual or extraordinary circumstances, which are not present here. *See, e.g.*, Wentzka v. Gellman, 991 F.2d 423, 425 (7th Cir. 1993); Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1255 (6th Cir. 1996).

## III.   Plaintiffs' Bias Claims Are Entirely Dependent Upon Its Underlying ADA and MHRA Claims.

Where WMHC has committed no violations of the MHRA it is not subject to civil bias offense claims, and Plaintiffs' fail to state a claim upon which relief can be granted.

Minnesota Law provides a civil remedy for "conduct that would constitute a crime and was committed because victim's or another's actual or perceived … disability as defined in section 363A.03". Minn. Stat. § 611A.79.  Minnesota Law further makes it a misdemeanor crime to violate Minn. Stat. §363A.11 (Minnesota's public accommodations statute). Minn. Stat. §363A.30, Subd. 4.  However, in the absence of a finding of a violation of Minn. Stat. §363A.11, there is no claim for a "misdemeanor." If the MHRA claim is dismissed, there is no basis for a determination that WMHC committed a "crime," and the bias offense must therefore be dismissed.[6]

---

[6]   To the extent the ADA claim is dismissed and any claim under state law remains, Defendant requests dismissal of any such claim pursuant to 28 U.S.C. § 1367.

Generally, Minnesota's Courts have determined that a valid claim for violation of Minnesota's bias offense statute, Minn. Stat. § 611A.79, requires a showing that the prohibited "conduct that would constitute a crime and was committed *because of* the victim's or another's actual or perceived … as defined in section 363A.03...." Minn. Stat. § 611A.79. (*Emphasis added.*). See <u>Seivers v. City of Minneapolis</u>, 2011 WL 284486, at *5 (D. Minn. Jan. 25,  2011);  <u>City of Minneapolis v. Richardson</u>, 239  N.W.2d  197, 203  (1976). (police officer's use of this racial epithet, coupled with his physical assault of a young African American boy constituted discrimination "because of" race in violation of the MHRA); and <u>Rosenbloom v. Flygare</u>, 487 N.W.2d 546, 549 (Minn. App. 1992) (racial epithets coupled with physical contact show racial animus motivating the physical contact) *rev'd on other grounds,* 501 N.W.2d 597 (Minn.1993).

Plaintiffs have pleaded no facts demonstrating they had any interaction with WMHC at all on the date at issue, much less an encounter charged with discriminatory animus. Because Plaintiffs have pleaded no discriminatory animus, i.e. the *because of* requirement of the statute, their claim fails to state a claim upon relief may be granted and the Court should dismiss Plaintiffs' bias offense claim.

## IV.   Disability Support Alliance Should Be Dismissed For Lack of Standing, Even if the Claims Brought by Scott Smith, Individually, Survive.

DSA has sued "on behalf of its members." An association may bring suit on behalf of its members if: 1) a member would have standing in their own right, 2) the interest the organization seeks to protect is germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of individual members.

Hunt v. Washington State Apple Advertising Commission, 432 US 333, 342 (1977).

As discussed above, Plaintiff Smith does not have standing in his own right.  If he lacks standing, there are no additional allegations in the complaint that would confer standing on any other member of the Disability Support Alliance to bring a claim. See Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd., 2005 WL 2989307, at *5 (N.D. Tex. Nov. 7, 2005) (dismissing organization where complaint only identifies one member of its organization with individual standing).

In the event Smith is not dismissed for lack of standing, the Disability Support Alliance should be dismissed.  A plaintiff choosing to assert organizational standing must be able to demonstrate some injury it has suffered that meets the *prudential* limitations on standing in addition to constitutional standing requirements. See Havens Realty Corporation v. Coleman, 455 U.S. 363, 378-79 (1982). (*Emphasis added.*)   There are three well accepted prudential limitations on standing: (1) there is no jurisdiction over generalized grievances; (2) a plaintiff may not rest a claim for relief on the rights of a third party; and (3) grievances must fall within the zone of interests protected by the relevant statutory provision. Access 4 All, Inc. v. G & T Consulting Co., LLC, 2008 WL 851918, at *5 (S.D.N.Y. Mar. 28, 2008) (citing Access 4 All, Inc. v. Trump Intern. Hotel and Tower Condominium, 458 F.Supp.2d 160, (S.D.N.Y. 2006); *LaFleur v. Whitman*, 300 F.3d 256, 269 n. 2 (2d Cir. 2002)).

As the court in G&T Consulting Co., LLC pointed out, "As a corollary to the second of these prudential limitations, courts have often declined to recognize the standing of associational ADA plaintiffs when the claims they assert are identical to those

of the individual plaintiffs in the case." Id., (citing *Access 4 All, Inc. v. Trump,* 458 F.Supp.2d at 173-75 (dismissing claims of associational plaintiff where, although it represented other disabled persons, it had "produced no evidence of injury to other disabled persons or [its] members"); Disabled in Action of Metropolitan New York v. Trump Intern. Hotel & Tower, 2003 WL 17517858 (S.D.N.Y. 2003) (dismissing claims of associational plaintiff because those claims were identical to those of the named plaintiffs and individuals were "better plaintiffs"); Access 123, Inc. v. Markey's Lobster Pool, Inc., 2001 WL 920051 (D.N.H. Aug. 14, 2001) (finding that associational plaintiff lacked standing because it merely repeated claims of the member plaintiff)).

Similar to the plaintiff in Access 4 All v. G&T Consulting, DSA has failed to alleged claims that are distinct from the claims of Scott Smith. The complaint does not allege the identity of any other members of the DSA. There has been no allegation in the Complaint that members of the DSA have suffered any distinct injury from those allegedly suffered by Smith. As a result, WMHC requests that the DSA's claims be dismissed for prudential reasons.

**V.      No Standing Conferred by Request for Attorney's Fees and Costs.**

As a result of the permanent changes made by WMHC to its accessible parking spaces there is simply no further problem to be redressed by the Court; injunctive relief is no longer necessary, and attorney's fees and costs are not available where the alleged architectural barriers are removed.  Therefore, Plaintiffs cannot be a "prevailing party" under the fee shifting provisions of the antidiscrimination statutes. In Buckhannon, the U.S. Supreme Court ruled that under the ADA, the catalyst theory was insufficient to

CASE 0:15-cv-02693-JNE-BRT   Document 11   Filed 08/14/15   Page 18 of 19
allow the claimant their attorney's fees and costs.[7] 532 U.S. 598, 610 (2001).  It further determined there needs to be three elements in place, including a judgment in favor of a party.

Under <u>Buckhannon</u>, in order to be a prevailing party, the claimant must first show that there has been a court-ordered change in the legal relationship between the plaintiff and the defendant. 532 U.S. at 604. Next a prevailing party is a party in whose favor a judgment is rendered, regardless of the amount of damages awarded. <u>Buckhannon</u>, 532 U.S. at 603.  Finally, a claimant must obtain judicial relief beyond a mere pronouncement (i.e. the court's ruling that defendant discriminated) to make the claimant a prevailing party. <u>Buckhannon</u>, 532 U.S. at 606.

In <u>Baer v. Donovan</u>, Minnesota's Court of Appeals acknowledged that Minnesota courts employ a federal standard in determining whether attorney's fees should be awarded under the MHRA. 763 N.W.2d 681 (Minn. App. 2009).  Consequently, based upon the <u>Buckhannon / Baer</u> factors, when a defendant's voluntary change or remediation occurs prior to the issuance of a court order compelling the defendant to make that change, the situation lacks the necessary judicial *imprimatur* on the change (i.e. because the judge did not order it to occur, the plaintiff cannot be the prevailing party).  That is precisely the situation here. As a result, the Plaintiffs lack any standing based upon some argument for fees under the fee shifting provisions of the antidiscrimination statutes. As a result, the complaint should be dismissed.

---

[7]    The <u>Buckhannon</u> court reviewed competing propositions. The catalyst theory,  in summary, allowed for attorney's fees and costs if a plaintiff sued and anytime  thereafter the defendant made changes to their property voluntarily or on a court order.

## CONCLUSION

Defendant Western Mental Health Center, Inc., respectfully requests the Court dismiss Plaintiffs' causes of action for lack of subject matter jurisdiction, based on lack of standing, and for failure to state a claim upon which relief may be granted.  Plaintiffs' claims are moot under the ADA and MHRA.

Respectfully Submitted,

Dated: August 14, 2015

STONEBERG, GILES & STROUIP, P.A.

By:  _s/Kevin K. Stroup_____
Kevin K. Stroup, Attorney Reg. No.170094
kevin@sgslawyers.com
300 South O'Connell Street
Marshall, Minnesota  56258
Telephone: (507) 537-0591
ATTORNEYS FOR DEFENDANT